D.G. v Rodriguez (2026 NY Slip Op 26022)

[*1]

D.G. v Rodriguez

2026 NY Slip Op 26022

Decided on February 10, 2026

Supreme Court, Albany County

Bryant, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 10, 2026
Supreme Court, Albany County

D.G., Petitioner,

againstAnthony Rodriguez, Director SHU, Respondent.

Index No. XXXX-25

Petitioner:
D.G.
Green Haven Correctional Facility
Respondent:
Letitia James
Attorney General of the State of New York
By: James D. Taylor
The Capital 
Albany, New York 12224-0341

Kevin R. Bryant, J.

A petition having been filed in the Albany County Supreme Court by D. G. (hereinafter referred to as "Petitioner") pursuant to Article 78 of the CLPR, alleging, inter-alia, that he is being wrongfully confined in violation of the HALT Act, and requesting that this Court reverse and annul a disciplinary determination and direct Respondents to annul and expunge the record of the findings entered by the Hearing Officer and to restore "to the prior status of incarceration . . . all privileges, restoration of 6 months good time and release from the Special Housing Unit"; and
A verified answer, memorandum of law, and other submissions having been received, reviewed and considered by this Court.
NOW, it is hereby,
ORDERED that the petition is granted, the determination on review is annulled and Respondents are directed to restore Petitioner to his prior status, restore all privileges and good [*2]time accrued, and release Petitioner from the Special Housing Unit forthwith [FN1]
.
On or about May 12, 2025, Petitioner was charged with possession of contraband, specifically, multiple cellular phones, a Tier III violation. A hearing was conducted on May 12, 2025, whereby testimony was elicited. With-regard-to the allegations themselves, the Hearing Officer considered the testimony of Corrections Officers R. L. and L. L. and numerous exhibits.
With-regard-to penalty, Lieutenant L. C. testified at the Hearing Officer's request. Prior to the start of the testimony, the Hearing Officer stated that "[t]he only thing I am going to ask of you is that the only questions your answer should be mine. Please do not respond directly to Mr. G.'s questions". The Hearing Officer asked what purportedly were "foundation questions" of the witness and received confirmation that the witness "received training from the Department concerning cellular telephones possessed by incarcerated individuals". The Hearing Officer then asked the witness "[b]ased on that training and experience, can you just briefly describe for us the potential dangers of an incarcerated individual possessing . . . cellular telephones?" No detailed information was elicited regarding the witness' sources of information or personal knowledge of the circumstances before the Court. While the witness was asked to provide opinion testimony regarding the general danger posed by the possession of cell phones by prisoners, the witness was not qualified as an expert and Petitioner was not given an opportunity to question the witness regarding his or her qualifications.
Lieutenant C. testified that cellular telephones "can aid in escapes real-time.
They can be used to facilitate disruptions around the facility, and also just can be used in aiding
a multitude of illegal activities . . . just . . . gives them more . . . options and flexibility to communicate, even with the individuals on the outside for what we have going on inside. And so, there's a multitude of things that can happen that inside personnel won't have the knowledge of" (Hearing Transcript [FN2]
, page 34). The Hearing Officer then interjected and asked a series of leading questions, and the witness answered them all in the affirmative. The witness then testified that "[t]he mere fact of it being able to record staff, whether security staff, civilian staff . . . they could use that to send this information to family members or just known people outside of here . . . it could be used as a target . . . which could be very unsafe" (T-35).
The Hearing Officer asked, "if an individual possessed more than one cellular phone at a time, let's say . . . upwards of seven . . . what does that indicate to you?". The witness replied "it indicates to me either the incarcerated individual is either (a) holding the phones for other incarcerated individuals who . . . would be more likely to come on the radar, as opposed to the other individual, who may not . . . kind of a bait and switch wort of thing [o]r this could be the actual individual . . . lending out the phones . . . for monetary value". The Hearing Officer then interjected once again and stated "[s]o basically, if I am understanding you, I just want to make sure its correct, it's indicative of the fact that . . . they could be selling the phones or . . . renting the phones out for other individuals". The witness answered in the affirmative (T-37).
Notably, Lieutenant C. did not use the terms "heinous", "destructive" or "imminent". The witness did not testify regarding any specific physical harm that was likely to result from the [*3]possession of cellular phones nor that such potential harm would be "serious". The testimony was all phrased in speculative terms regarding what "could" or "may" result from the possession of cellular phones and nothing to establish the likelihood of any such result in this-particular-case. Lieutenant C. offered no testimony about the specific circumstances of Petitioner's possession or his prior behavioral history. In point-of-fact, it is not clear from the testimony whether Lieutenant C. actually-works in the facility or unit where Petitioner is housed nor whether the Lieutenant has ever met or interacted with Petitioner. Other than general assertions regarding the possession of cell phones and the possible impact on facility security, the witness offered nothing to establish Petitioner's intentions nor anything to establish that his possession was the part of any specific plan to disrupt the safe operation of the facility.
While Petitioner was given a very limited opportunity to inquire of the witness, and he tried to address the witness' lack of personal knowledge, the Hearing Officer would not permit this line of questioning on the grounds that it lacked a foundation. The Hearing Officer clarified that "there's been no indication on the record that the Lieutenant has any knowledge of any cellular telephones being involved in your cell . . .The Lieutenant is basically testifying on her depth of knowledge and expertise in corrections".
After the completion of Lieutenant C.'s testimony, the Hearing Officer found that the charges against Petitioner had been sustained. The Hearing Officer rejected all of Petitioner's evidentiary objections and found Petitioner guilty of the offenses charged. The Hearing Officer imposed a penalty of placement in a special housing unit, loss of phones, packages and commissary for a period of three-hundred and sixty-five days and the loss of six months of good time credit. In conclusory fashion, and without specific reference to Petitioner's circumstances or intent, the Hearing Officer found that
[c]ellular telephones are dangerous contraband because, to maintain security within a facility, all incarcerated individuals' communication to outside of the facility need to be monitored. Unmonitored communications through cellular phones can be used to smuggle in other dangerous contraband, such as narcotics and weapons, plan escape or facility disruption, and planning retribution against staff. Accordingly, cellular telephones pose a serious threat to the security of a correctional facility . . . [A]dditionally, the act was so heinous and destructive that placement of the individual in general population housing creates a significant risk of imminent serious injury of staff and other incarcerated persons and creates an unreasonable risk to security of the facility (T-48).While Petitioner was present at the hearing, his defense to the charges focused primarily on the circumstances of the search that led to the seizure of the phones, and he challenged the admissibility of evidence. The record is clear that he was not specifically offered the opportunity, nor did he make any argument, regarding the nature of his offense and whether it qualified for extended segregated confinement pursuant to the HALT Act. 
Petitioner appealed the determination of the Hearing Officer. By decision dated August 1, 2025, his appeal was denied. The instant Article 78 was filed on September 18, 2025, by Order to Show Cause returnable on November 14, 2025. The matter was subsequently adjourned at the request of counsel for Respondents. Written responses were received from counsel for Respondents on December 26, 2025. Shortly after the filing of the instant petition, [*4]Petitioner was transferred back to general population [FN3]
. 
Applicable Law
The HALT act was enacted by the New York State Legislature in 2021. As set forth in Corrections Law §137, the HALT act imposes specific limits and regulations regarding the placement of individuals in segregated and other specific forms of disciplinary confinement. The HALT Act defines segregated confinement as a type of confinement in which the incarcerated individual is offered less than seven hours out-of-cell programming or other out-of-cell activities daily [FN4]
. HALT limits segregated confinement to not more than fifteen consecutive days or twenty total days in any sixty-day period [FN5]
.
Specifically, CL §137[6][k] provides in relevant part that
The department may place a person in segregated confinement beyond the limits of subparagraph (i) of this paragraph or on a residential rehabilitation unit only if, pursuant to an evidentiary hearing, it determines by written decision that the person committed one of the following acts and if the commissioner or his or her designee determines in writing based on specific objective criteria the acts were so heinous or destructive that placement of the individual in general population housing creates a significant risk of imminent serious physical injury to staff or other incarcerated persons, and creates an unreasonable risk to the security of the facility. The extent to which DOCCS has complied with the provisions of the HALT Act has been the subject of significant recent litigation. This Court's involvement with this issue dates-back to a decision issued in Fuquan F. v. Annucci, 81 Misc 3d 517 (Supreme Court, Albany County, 2023). Therein, after granting class action status to a-number-of incarcerated individuals who alleged ongoing and systematic violations of the ACT, this Court found that DOCCS was following a policy known as "k (2) Confinement Policy" that was not authorized by statute and which essentially provided that any Tier III violation was "inherently" heinous or destructive. This Court found that such a policy is null and void as arbitrary and capricious and not in compliance with the requirements of the HALT Act. This Court further found that based upon said "policy", Hearing Officers were routinely failing to comply with CL S137(6)(k)(ii) and failing to conduct fact-specific inquiries and make specific findings-of-fact in any hearings requesting an extended segregated confinement. This Court further found that any and all determinations made to place members of the certified class in extended segregated confinement, a residential rehabilitation unit, or any other unit requiring compliance with CL §137(6)(k)(ii), made pursuant to the k(2) Confinement Policy, or determinations made without required specific [*5]written findings of fact and conclusions, were declared as null and void [FN6]
.
Throughout the second half of 2025, the Third Department has issued a-number-of decisions outlining DOCCS' continued disregard of the provisions of HALT and their continued practice of imposing lengthy periods of segregated confinement without sufficient cause as set forth by the legislature. In Peterkin v. DOCCS, 242 AD3d 26 (3rd Dept., 2025) (multiple Tier III violations involving violent conduct and assault on staff), the Petitioner was sentenced to a period of segregated confinement of approximately four years. The penalty was subsequently reduced to seven-hundred and thirty days. It was subsequently amended further in response to this Court's decision in Fuquan. In response to DOCCS' request that the petition be dismissed as moot, the Appellate Court disagreed and found that the "issues pertaining to impermissible periods of segregated confinement and violations of HALT Act provisions are likely to be repeated, typically evade review and present significant and important questions not previously passed on". The Court concluded that DOCCS had, as alleged, violated HALT's provisions regarding segregated confinement. In the first of a-number-of written warnings to DOCCS, the Appellate Court wrote that "hearing officers have no authority to disregard the HALT Act's statutory limitations and requirements by substituting their own judgment and imposing penalties beyond those which the law allow — for whatever reason". The Court concluded by stating that "to the extent this unlawful practice is continuing, it must cease" (emphasis supplied) [FN7]
. Clearly, given decisions entered in the following months, and the facts presented herein, DOCCS has apparently failed to heed the Appellate Division's warning.
In Matter of Spencer v. Martuscello, 244 AD3d 1463 (3rd Dept., 2025) (multiple Tier III charges of possessing contraband, including cell phones and a "screw bit tool" and smuggling), the Appellate Division affirmed the Hearing Officer's findings as to the charges but, citing Peterkin, found "that the penalty of 270 days of confinement in the special housing unit was in clear violation of the HALT Act". The Court found that "inasmuch as Petitioner already served his confinement penalty, his challenge to the confinement sanction and corresponding request for declaratory relief is moot". While the Court clearly found that the confinement penalty was not allowed pursuant to HALT, the Court did not further elaborate on this conclusion, the Court did not specifically address whether possession of a cell phone, without further findings regarding the specific conduct is, as a matter of law, an act that rises to the level where segregated confinement is warranted. In closing, the Court stated that "[w]e again take this opportunity to remind Respondent that hearing officers have no authority to disregard the HALT Act's statutory limitations and requirements by substituting their own judgment and imposing penalties beyond those which the law allows — for whatever reason" (emphasis supplied).
In Matter of Baher v. Rodriguez, _____ AD3d _____, 2025 NY Slip Op 07056 (3rd Dept., 2025) (Tier III charges of engaging in a sexual act), while the penalty that was imposed had already been served, the Court rejected the claim that the matter was moot. The Court also rejected the argument that Petitioner had failed to preserve the violation of HALT, explaining that "[t]o the extent any preservation defect remains, the Hearing Officer's imposition of the [*6]overlong segregated housing penalty without following the lawful procedure set out in the HALT Act presents a question of law that appears on the face of the record that could not have been avoided had it been properly raised". The Court annulled the penalty imposed and remanded the matter for the imposition of a proper penalty. In closing, the Court again warned DOCCS that "[i]n so doing, we repeat and emphasize that hearing officers have no authority to disregard the HALT Act's statutory limitations and requirements by substituting their own judgment and imposing penalties beyond those which the law allows" and, citing Peterkin, again warned that "this unlawful practice must cease" (emphasis supplied).
In Matter of Wingate v. Martuscello, _____ AD3d ____, 2025 NY Slip Op 07048 (3rd Dept., 2025) (Tier III charges of possessing a ceramic blade capable of causing serious physical injury) the Court once again found that DOCCS violated provisions of the HALT Act by improperly denying the prisoner the right to counsel at his hearing. In addressing the remedy for the violation of HALT, the Court explained that "[e]xpungement is required only when (1) the challenged disciplinary determination is not supported by substantial evidence; (2) there has been a violation of . . . fundamental due process rights . . . or (3) other equitable considerations dictate expungement of the record rather than remittal for a new hearing". The Court found that "considering that Petitioner has already served the penalty of 250 days of confinement in the special housing unit and that over 2 ½ years has passed since the initial search that resulted in the discovery of the weapon at issue, we are of the view that the equitable remedy of expungement is warranted here".
Discussion
This Court has considered and herein rejects the argument raised by Respondent that Petitioner failed to preserve his objection to the finding that the acts alleged are not heinous nor destructive within the meaning of the HALT Act (see, Matter of Baher v. Rodriguez, supra., ____ AD3d _____, 2025 NY Slip Op 07056). The Court notes that Petitioner appeared throughout the proceedings below without counsel [FN8]
. While he made a reasonable attempt to defend himself, as a pro-se individual without legal training, he is entitled to a certain level of leeway with-regard-to applicable procedure. Under the circumstances, Petitioner cannot be expected to fully grasp the legal issues that must be decided by the Hearing Officer, nor can he be expected to understand applicable rules with-regard-to preservation of issues. Moreover, the basic argument before this Court is that the Hearing Officer failed to correctly apply the standard set forth by the legislature with-regard-to solitary confinement. No authority has been presented, nor can this Court conceive of any basis to find, that the Hearing Officer's obligation to follow HALT can be waived. As such, this Court finds that Respondent's argument regarding the failure to preserve is wholly without merit.
With-regard-to the merits of the argument raised by Petitioner, it is the finding of this Court that Respondent has not outlined any cogent argument to support the conclusion that the possession of multiple cellular telephones is an act that is "heinous or destructive" as those terms are used in the HALT Act. As repeated and emphasized by the Appellate Division less than two months ago, "hearing officers have no authority to disregard the HALT Act's statutory limitations and requirements by substituting their own judgment and imposing penalties beyond those which the law allows". The Appellate Court, citing Peterkin, has also repeatedly warned that "this unlawful practice must cease".
The above line of cases, considered in-light-of the facts herein, demonstrate a continuing disregard for the Appellate Division's rulings regarding HALT. This disregard must-be-considered in-light-of the applicable processes under Article 78 of the CPLR, and the practical impossibility of a wrongfully confined prisoner seeking and securing relief in a timely manner. The instant petition is the perfect example of how DOCCS can, and apparently does, use the applicable review procedure to orchestrate long-term solitary confinement for periods far in excess-of-the statutory limits relying on the review process taking far longer than the permitted maximum fifteen -day confinement for offenses that do not meet the HALT requirements. As such, an inmate who is wrongfully determined to have committed an act that is "heinous and destructive" has little, if any, practical recourse.
In reviewing the language of HALT and the legislative history, it-is-clear that the legislature intended long-term segregated confinement to be imposed only for specific types of violent conduct that cause or place individuals at imminent risk of serious physical injury. It is the finding of this Court that there is no competent nor sufficient evidence in the record to support a finding that Petitioner's transgression caused an imminent threat to the safety of staff or other inmates. It is the further finding of this Court that the possession of contraband, specifically cellular telephones, is not remotely within the general category of offenses outlined in Corrections Law 137 (6)(k)(ii) (A-G). Clearly, if the legislature intended solitary confinement to be an available penalty for the possession of contraband other than dangerous weapons, the statute would so indicate. Similarly, if the legislature intended that a cellular phone be considered a dangerous weapon, the statute could have so provided.
The articulated potential threat herein is remote and would require numerous intervening steps to rise to the level of imminency. While this Court has been unable to find any case that specifically addresses the definition of imminency in the context of a HALT proceeding, in the context of child protective proceedings, the Court of Appeals has explained that "imminent danger, however, must be near or impending, not merely possible (emphasis supplied) (Nicholson v. Scoppetta, 3 NY3d 357 (2004)). See also, Golden v. Stream Heat, 216 AD2d 440 (2nd Dept., 1995) wherein, in the context of a request for an injunction, the Court distinguished imminent harm from harm that is remote or speculative. Also, Matter of P. & E.T. Found, 204 AD3d 1460 (4th Dept., 2022). Applying these holdings to the issue of imminency in the HALT context, it is the finding of this Court that the finding of imminency in this case is insufficient as it is based on speculation and conjecture. Moreover, the potential threat, if accepted as valid, is too remote to be considered imminent.
The alleged threat posed by the possession of cellphones is based upon speculation that the inmate intends to sell and/or distribute the cell phones and the further speculation that the distribution would be intended for, or reasonably lead to, acts of violence or other dangerous conduct by the individuals who were provided the phones. In-this-regard, the testimony of [*7]Lieutenant C. was not based upon any personal knowledge of the specific circumstances before the Hearing Officer. Rather, it was based upon general assumptions and conclusions allegedly gleaned from decades of experience with DOCCS. 
As noted above, the Court has reviewed the testimony and notes that the vast-majority-of the witness' testimony consisted of "yes" or "no" answers to clearly leading questions posed by the Hearing Officer. There are-few, if any, substantive assertions from the witness regarding the controlling issues. Most notably, the witness did not use the terms "heinous", "destructive, nor "imminent" and did not offer any testimony regarding specific "serious harm" that could result from Petitioner's actions. This type of testimony in response to leading questions by the fact finder, although technically permissible in this type of administrative proceeding, has very little probative value. It is insufficient to establish that this particular-inmate's possession of contraband met the statutory requirements for extended segregated confinement [FN9]
. While this Court recognizes the Hearing Officer's attempt to create the kind of record that HALT requires, it is the finding of this Court that the testimony was conclusory and insufficient to meet DOCC's burden. Specifically, while the testimony established that the possession could possibly result in a threat of harm, the element of immediacy is wholly lacking.
For these reasons, it is the finding of this Court that the acts of Petitioner, specifically, the possession of multiple cellular phones, is not, absent more specific testimony, by its nature, heinous nor destructive as contemplated by the legislature. To the contrary, the approach of the Hearing Officer and the contents of the record demonstrate a basic adherence to the "policy" specifically rejected in Fuquan, specifically, that fact-specific findings are not required and that acts can be found to meet HALT requirements based strictly on "inherency".
For the foregoing reasons, the imposition of segregated confinement for a period in-excess-of fifteen days was not permitted. There is nothing in the record to demonstrate specific circumstances of Petitioner's offense that support a finding that his conduct created an imminent risk of harm to staff or to other prisoners. 
As such, the determination rendered on August 1, 2025, is hereby deemed null and void. Insofar as Petitioner has already served far more than the permitted penalty in segregated confinement, it is the finding of this Court that he must be discharged from segregated confinement immediately. Given that the underlying hearing was conducted in a way that denied Petitioner of fundamental fairness and in disregard of the provisions of the HALT Act, consistent with the Court's holding in Matter of Wingate v. Martuscello, supra., _____ AD3d ____, 2025 NY Slip Op 07048, the finding that he is guilty of the Tier III violation, the finding that the offense was a heinous and destructive act as defined in the HALT act, and the resultant penalty must be expunged from his disciplinary record. Under the circumstances, it is the finding of this Court that adherence to the findings and a remand for an appropriate disposition is [*8]contrary to the interests of justice. 
The signing of this Decision and Order shall not constitute entry or filing under CPLR §2220. Counsel is not relieved from the applicable provisions of that rule regarding notice of entry.
Dated: February 10, 2026
Kingston, New York
ENTER,
HON. KEVIN R. BRYANT, J.S.C.

Footnotes

Footnote 1:In determining this motion, this Court has considered documents filed with the Court as cited herein as well as all other filings in this matter that have been received by the Court.

Footnote 2:Hereinafter referred to as "T"

Footnote 3:Petitioner's return to general population was brought to this Court's attention in a letter received from Petitioner dated January 15, 2026, inquiring regarding the status of this matter. While his transfer out of segregated confinement has been confirmed, no explanation has been provided to the Court, nor has the apparent modification of his penalty been addressed by Respondent in their answer or submissions.

Footnote 4:Correction Law § 137 (6)(j)(ii)

Footnote 5:Correction Law § 137 (6)(i)

Footnote 6:A contempt application is currently pending before this Court in the Fuquan matter wherein Petitioners have alleged a litany of ongoing violations of this Court's Order.

Footnote 7:Internal citations, quotations and punctuation omitted in all quotations contained herein.

Footnote 8:Petitioner was initially asked if he wanted to be represented by counsel and he declined. Thereafter, at a number-of-times during the hearing, Petitioner requested clarification regarding certain issues and the Hearing Officer indicated that he could not provide legal advice. Given the Hearing Officer taking an active role with-regard-to presenting DOCCS' position and facilitating their proof, the refusal to provide any type of similar assistance to Petitioner, and the failure to remind Petitioner of his right to counsel, reinforces this Court's concerns regarding the lack of fundamental fairness throughout the hearing process.

Footnote 9:Given the manner-in-which the testimony was elicited, this Court finds that it was more confirmatory of the pre-determined opinions of the Hearing Officer and DOCCS rather than genuine probative evidence regarding the nature and/or imminency of the threat posed by the actual transgression. This type of "policy" approach to the controlling factual issues appears to the Cout to be another attempt by DOCCS to adhere to their position that necessary findings can be made based on "inherency" rather than the specific circumstances of the inmate's transgression, an approach that was specifically rejected by this Court in Fuquan.